Emil G. Raeder and Ruth B. Raeder v. Commissioner.
Raeder v. Commissioner
Docket No. 2071-64.
United States Tax Court
T.C. Memo 1965-230; 1965 Tax Ct. Memo LEXIS 101; 24 T.C.M. (CCH) 1172; T.C.M. (RIA) 65230; August 25, 1965
*101 Walter W. Davis, Millerton, N. Y., for the petitioners. Lee C. Kamp and Bernard Goldstein for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies and additions to tax under section 6653(b) for fraud as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b)
1956
$1,312.54
$ 656.27
1957
2,800.59
1,400.30
1958
2,842.59
1,421.30
1959
4,314.55
2,157.28
1960
4,551.48
2,275.74
The issues for decision are: (1) Did Emil have gross income in excess of that reported for each year and, if so, how much; (2) Is a part of the deficiency for each year due to fraud; and (3) Was the return for 1956 false or fraudulent with intent to evade tax? Findings of Fact The petitioners, husband and wife, lived at Millbrook, New York, and filed joint income tax returns for each tax year with the director of internal revenue for the district of Albany, New York. Ruth received and reported income of $600 for 1959 and $1,933.32 for 1960 as a part-time schoolteacher. Emil, who received a D.D.S. degree in 1935, has practiced dentistry in Millbrook since 1936. His income since 1955 has been *102 derived from his practice, dividends, interest from savings accounts and a mortgage, and gains from stock sales. A card in the name of each patient, showing on the back thereof all payments made by each patient and the date each was made, was kept as Emil's original record of income from his practice. A "Daily Receipts Book" and an "Expenses Book" were also kept. Each credit in the Daily Receipts Book reflects a payment actually made by a patient but many payments actually made by patients and shown on the patient cards, are not shown in the Daily Receipts Book. Some payments received by Emil from patients were in cash and some were by checks. No cash was deposited in Emil's checking account in Bank of Millbrook during the years 1956 through 1960. Emil prepared the original joint income tax returns filed by the petitioners for the years 1956 through 1960. The amounts shown on those returns as gross income from his practice of dentistry were taken by Emil from his Daily Receipts Book, not from his patient cards. The amounts he reported and the amounts proven [1] herein are as follows: Year
Reported
Proven
1956
$16,505.62
$24,067.27
1957
15,547.75
26,086.27
1958
15,893.35
24,861.50
1959
18,532.00
31,596.88
1960
18,959.00
32,004.50
*103 Emil, taking the amounts from his expense book, claimed expenses of his practice on the original returns as shown in the indicated column and the stipulated correct amounts are shown in the right hand column below: Year
Claimed
Correct
1956
$7,616.31
$7,312.21
1957
7,530.57
7,530.57
1958
8,039.28
7,292.69
1959
9,089.83
9,141.70
1960
9,336.63
8,709.93
The petitioners received interest of $20.90 in 1956, $426.54 in 1957, $416.41 in 1958, $416.95 in 1959 and $598.01 in 1960. Emil reported interest on the original returns as follows: $22.93 for 1956, $414.52 for 1957, $102.31 for 1958, $37.53 for 1959, and $163.69 for 1960. A revenue agent came to Emil's office in April 1961 to audit the returns for the tax years and was joined in August 1961 by a special agent to determine whether fraud was involved in the filing of those returns to evade tax. The petitioners filed amended returns as follows: on January 5, 1962, an amended return for 1960 was filed and on April 12, 1962, amended returns for 1957, 1958 and 1959 were filed. There was reported on those returns total income and business expenses as follows: *104 Total In-
Year
come
Expenses
1957
$21,869.50
$ 8,105.57
1958
21,748.35
8,614.28
1959
29,331.72
9,827.33
1960
30,887.70
10,418.05
The petitioners during all or some of the last four tax years had several accounts in the Bank of Millbrook, one of which and two in California were not disclosed to the special agent until shortly before the trial. The original return for 1956 was false and fraudulent with intent to evade tax. A part of the deficiency for each of the years 1956, 1957, 1958, 1959 and 1960 was due to fraud. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioners have the burden of proof to show that they are entitled to deductions not allowed by the Commissioner in his determination of the deficiencies and to show that any amount was erroneously included in income. Emil was present in Court during all of the trial but did not testify. No witness was called by the petitioners. They introduced no evidence except through the stipulation of facts. Thus, they have shown no error in the adjustments leading to the determination of the deficiencies except for a few changes required by the *105 stipulation of facts, the evidence introduced by the Commissioner and, perhaps, by allegations in the answer admitted in the reply. These changes and others will be made under Rule 50 and need no discussion here. The Commissioner has proved by the stipulation and Exhibit AU that the petitioners had large amounts of income in each year from Emil's practice which were not reported by them on their original joint returns. The record also shows that they had certain income from interest, dividends and capital gains which was not reported on those returns. Some omissions proven here were not discovered by the Commissioner until after the notice of deficiency was mailed. The Commissioner has the burden of proof on the fraud issue and must prove by clear and convincing evidence that the original returns were false and fraudulent with intent to evade tax. The amended returns which the petitioners filed in 1962 for the last four tax years are not the returns in question and, regardless of whether or not they might indicate a guilty conscience on the part of Emil, they do not add here to the Commissioner's burden of proof. They were filed after Emil knew that the investigating agents had *106 discovered the omissions of income in his Daily Receipts Book and in his original returns. More income and expenses are reported on the amended returns than were reported on the original returns, however, the amended returns do not correctly report the income and deductions of the petitioners. Emil had correct records of all amounts received by him during each tax year from patients for dental work performed by him. Those were the patient cards, his original records. He knew all about them but he did not use those records, which he knew were correct, in making his and his wife's joint return for any of the years 1956 through 1960. He had a second set of records called herein the Daily Receipts Book. It did not record large portions of his receipts from patients and thus was very misleading. The gross omissions were not accidental. Emil chose to report only that part of his patient income shown in his Daily Receipts Book in preparing the original joint returns for the years here involved. It was not a book of original entry and in each year there were omitted from it large amounts of income received by Emil from patients and recorded on the patient cards. These large amounts were *107 thus omitted also from the original joint returns which Emil prepared and filed. Emil, who was present but did not testify at the trial, offered no explanation of why he kept the second set of records or of why he omitted such large amounts of his income from his returns. The keeping of a false second record of receipts, the large amounts of admitted income omitted from that book and from the returns and the consistent use of this misleading procedure over a period of five years supplies strong and convincing support for the additions to tax for fraud in each tax year as determined by the Commissioner. Cf. ; ; ; , affd. . The record as a whole indicates that Emil well knew that he had received far more income in each year than he had reported and that he was well aware of the requirements of the Internal Revenue Code with respect to reporting all of his income. He also failed to report some income received from sources other than patients but those omissions need not be relied upon *108 in reaching the conclusion that a part of the deficiency for each year was due to fraud with intent to evade tax. The statute of limitations does not begin to run where a return was false and fraudulent with intent to evade tax. The petitioner objects to Exhibits AV, AW and AX as inadmissable, however, the findings are not based upon those three exhibits but are based upon other evidence of which these documents are merely summaries. Arguments made by the petitioner based upon comments of the special agent which he showed were merely hearsay need no discussion herein. Decision will be entered under Rule 50. Footnotes
1. Most of which are stipulated.↩